UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

**CIVIL ACTION NO. 4:18CV-00161-JHM**

**KENNETH L. HAWKINS and his wife,**
**MARSHA F. HAWKINS**                                                                                           **PLAINTIFFS**

**V.**

**COMMONWEALTH OF KENTUCKY,**
**COUNTY OF WEBSTER, ET AL.**                                                                          **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on a motion by Defendants for summary judgment [DN 45]. Fully briefed, this matter is ripe for decision.

**I. BACKGROUND**

Plaintiffs, Kenneth and Marsha Hawkins, brought this civil rights action pursuant to 42 U.S.C. § 1983 against Defendants alleging violations of due process, the takings clause, and abuse of process under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. Plaintiffs also assert state law claims for malicious prosecution and trespass.

Plaintiffs own 16 acres of property located in both Webster County and Hopkins County, Kentucky. [DN 1-2, Deed]. Plaintiffs assert that on August 15, 2016, they discovered that employees of the Webster County Road Department removed dirt from their property and deposited the dirt on an adjacent landowner's property without permission or compensation to improve or widen a road that forms a boundary between the two properties. Plaintiffs represent that after they contacted the Webster County Judge Executive Steve Henry, Henry instructed Webster County Magistrate Jerry Brown to repair the damage to Plaintiffs' property. However, Plaintiffs aver that no action was taken by the county or the road department. Plaintiffs further

contend that only after Mr. Hawkins complained to Henry in August of 2016 was the north side of the road similarly widened. After widening the road, Plaintiffs allege that the county took an additional 15 feet of the Plaintiffs' property as a new right-of-way. [DN 1, DN 48].

Webster County Road Supervisor Rob Mooney testified that Webster County decided to widen the road because shade from overhanging tree limbs prevented ice and snow from melting off the road during the winter. [DN 46-1, Mooney Dep. at 24]. Mooney indicated that the request was placed by Jerry Brown, Magistrate for the Second District. [*Id*. at 22]. Mooney testified that the road was widened by one foot and, as part of the widening process, the banks on both sides had to be "sloped back" and the drainage ditches were reconstructed. [*Id*. at 24–25]. According to Mooney, because the project required encroachment onto the land on the north side of the road, the road department obtained written consent from the landowner on the north side. [*Id*. at 26]. However, Mooney testified that no consent was needed from Plaintiffs because the work on the road's south side did not extend beyond the county's right-of-way. [*Id.* at 54]. Additionally, Mooney testified that no dirt was removed from Plaintiffs' property, but instead the work was done within the county's right-of-way and the dirt had been reshaped as apart of the "sloping back" process. [*Id*. at 59–60]. Mooney further testified that the road department reshaped the south side bank to satisfy Plaintiffs' complaints made to Henry. [*Id*. at 58–59].

In November of 2016, Plaintiffs began installing fence posts on their property. In January of 2017, the Webster and Hopkins County Attorneys sent a letter to Mr. Hawkins and copied both the Webster and Hopkins County Judge Executives stating that the fence posts located on Plaintiffs' property were too close to the road. Plaintiffs represent they subsequently met with the Hopkins County Judge Executive and the Hopkins County Road Department Foreman, Jeff Browning. As a result, in March of 2017, Plaintiffs removed the fence posts and placed them

2

where instructed by Browning. [DN 46-3, Hawkins Dep. at 34]. Plaintiffs allege that in April of 2017 they again met with Browning and other employees from the Hopkins County Road Department to install drainage tiles and measure for the new fence posts. Plaintiffs contend that consistent with the new measurements, they installed new fence posts on their property. [DN 1, DN 46-3 at 36–37].

On September 25, 2017, the Webster County Sheriff's Office served Mr. Hawkins with a criminal complaint charging him with a violation of KRS § 511.080, Criminal Trespass Third Degree, for knowingly entering upon the Webster County right-of-way on Frank Benson Road and unlawfully erecting fence posts and fencing in said right-of-way. Webster County Sheriff Frankie Springfield signed the affidavit filed in support of the criminal complaint. On June 1, 2018, the criminal action was dismissed with prejudice.

On October 8, 2018, Plaintiffs filed this action. Defendants previously moved to dismiss all federal claims against them. On December 19, 2018, the Court dismissed the federal claims against the Webster County Road Department and Webster County Sheriff's Office finding that they are not "persons" subject to suit under 42 U.S.C. § 1983. The Court denied the motion to dismiss the claims against Webster County. After the completion of discovery, Defendants now move for summary judgment on the remaining federal and state law claims.

## II. STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party

satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

### III. DISCUSSION

"Section 1983 creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere." *Flint ex rel. Flint v. Kentucky Dept. of Corrections*, 270 F.3d 340, 351 (6th Cir. 2001). Two elements are required to state a claim under § 1983. *Gomez v. Toledo*, 446 U.S. 635 (1980). "[A] plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "Absent either element, a section 1983 claim will not lie." *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

Under § 1983, a municipality can be held liable only if the plaintiff demonstrates that the injury suffered was a direct result of the municipality's official policy or custom. *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). "[A] municipality cannot be held liable

4

*solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* Municipal liability "may be imposed for a single decision by municipal policymakers under appropriate circumstances," such as "where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–481 (1986). In other words, municipal liability will attach for an official's activity where the official is "responsible for establishing final government policy respecting such activity." *Id.* at 483.

### A. Abuse of Process Claim

Webster County moves for summary judgment on Plaintiffs' federal abuse of process claim. Plaintiffs do not respond to this argument. "[A] federal abuse of process claim does not exist in the law of this circuit." *Rapp v. Dutcher*, 557 F. App'x 444, 448 (6th Cir. 2014); *see also Voyticky v. Village of Timberlake, Ohio*, 412 F.3d 669, 676 (6th Cir. 2005); *Conrad v. City of Berea*, 243 F. Supp. 3d 896, 904 (N.D. Ohio 2017) ("[T]he Sixth Circuit does not recognize a federal abuse of process claim under 42 U.S.C. § 1983."). Because Plaintiffs have not offered the Court any persuasive reasons why a federal abuse of process claim should be allowed in this particular case, this claim is dismissed. *Maqablh v. Carter*, No. CV 19-83-DLB, 2020 WL 1846992, at *4 (E.D. Ky. Apr. 10, 2020).

### B. Malicious Prosecution Claim

Webster County moves for summary judgment on Plaintiffs' Fourth Amendment malicious prosecution claim arguing that summary judgment is warranted because (1) Mrs. Hawkins was not charged with any crime; (2) Plaintiffs fail to establish a deprivation of liberty which is a necessary element of a malicious prosecution claim, and (3) Webster County's policy did not cause the county attorney to charge Mr. Hawkins. In response, Plaintiffs argue that the only real issue the

5

Court must decide is whether Mr. Hawkins had a sufficient deprivation of liberty to rise to the level of a constitutional violation. Plaintiffs contend that because Mr. Hawkins was compelled to comply with all orders of the state court under penalty of arrest and incarceration and because he was compelled to hire legal counsel at his expense, he suffered a deprivation of liberty. [DN 48 at 9–11].

To succeed on a malicious prosecution claim under the Fourth Amendment, Plaintiffs must establish that (1) a criminal prosecution was initiated against them and a county official or officer made, influenced, or participated in the prosecution decision; (2) there was no probable cause to support the charges; (3) as a result of the legal proceedings, Plaintiffs suffered a deprivation of liberty "apart from the initial seizure"; and (4) the criminal proceedings ended in Plaintiffs' favor. *Miller v. Maddox*, 866 F.3d 386, 389 (6th Cir. 2017) (citing *Sykes v. Anderson*, 625 F.3d 294, 308–09 (6th Cir. 2010)).

Webster County argues that Mrs. Hawkins was not charged with any crime, and therefore, summary judgment should be granted. The Court agrees. The county attorney did not initiate any criminal prosecution against Mrs. Hawkins; therefore, summary judgment is granted in favor of Webster County on her claim for malicious prosecution.

Webster County argues that Mr. Hawkins cannot establish element three—that he suffered a deprivation of liberty. "'A malicious prosecution claim under § 1983 is actually a Fourth Amendment claim to be free from pretrial detention without probable cause.'" *Saal v. City of Wooster*, No. 5:18-CV-2744, 2020 WL 2733735, at *4 (N.D. Ohio May 26, 2020) (*quoting Kinlin v. Kline*, No. 1:12 CV 581, 2012 WL 3780461, at *6 (N.D. Ohio Aug. 31, 2012) (internal quotation marks and citation omitted). "Which is why traditionally, malicious prosecution claims entail defendants who are detained prior to trial." *Saal*, 2020 WL 2733735, at *4 (cleaned up). To

prevail on element three, "a plaintiff must show that he, 'as a consequence of a legal proceeding . . . suffered a deprivation of liberty, as understood in . . . Fourth Amendment jurisprudence, apart from the initial seizure." *Id*. (quoting *Noonan v. Cty. of Oakland*, 683 F. App'x 455, 463 (6th Cir. 2017) (quoting *Sykes*, 625 F.3d at 308–09). In other words, "the initial arrest alone is an insufficient deprivation of liberty," *Noonan*, 683 F. App'x at 463, and the Sixth Circuit has made clear that having to stand trial alone, without additional onerous conditions, does not constitute a constitutional deprivation of liberty. *Saal*, 2020 WL 2733735, at *4 (citing *Cummin v. North*, 731 F. App'x 465, 473 (6th Cir. 2018)).

In the present case, there is no evidence that Mr. Hawkins "was ever handcuffed, arrested, incarcerated, required to post bail or pay any bond, subject to travel restrictions, or taken into custody." *Saal*, 2020 WL 2733735, at *4. Mr. Hawkins was simply issued a summons and required to appear in court. [DN 46-5 at 6]. He appeared in court no less than four times before the case was dismissed. And, "as most commonly applied in the Sixth Circuit, '[s]ervice with a summons to appear at trial or some other court proceeding does not rise to the level of a constitutional deprivation.'" *Saal*, 2020 WL 2733735, at *4 (quoting *Noonan*, 683 F. App'x at 463 (quoting *Billock v. Kuivila*, No. 4:11-CV-02394, 2013 WL 591988, at *6 (N.D. Ohio Feb. 14, 2013)). Furthermore, consistent with many of its sister circuits, the Sixth Circuit has held that "requiring attendance at court proceedings does not constitute constitutional deprivation of liberty." *Cummin*, 731 F. App'x at 473 (citing *Rapp v. Putman*, 644 F. App'x. 621, 628 (6th Cir. 2016); *Noonan*, 683 F. App'x at 463). Because there is no evidence to suggest that Mr. Hawkins suffered a cognizable deprivation of liberty sufficient to establish a constitutional violation—the third element of a malicious prosecution claim, Webster County is entitled to summary judgment on Mr. Hawkins's Fourth Amendment malicious prosecution claim.

### C. Failure to Train

Webster County moves for summary judgment on Plaintiffs' failure to train claim. Plaintiffs do not respond to this argument. As such, Webster County is entitled to summary judgment on this claim.

### D. Takings Claim

The Fifth Amendment to the U.S. Constitution provides that private property shall not "be taken for public use, without just compensation." "A property owner has an actionable Fifth Amendment takings claim when the government takes his property without paying for it." *Knick v. Township of Scott, Pennsylvania*, 139 S. Ct. 2162, 2167 (2019). In *Knick*, the United States Supreme Court held that a plaintiff is not required to seek a remedy in state court for an alleged takings violation before bringing his or her claim to federal court. 139 S. Ct. at 2167–68. A taking can occur by a "physical occupation/invasion" or through a "regulatory takings." *Houthoofd v. Tuscola Cty. Rd. Comm'n*, No. 19-11986, 2020 WL 3250194, at *10 (E.D. Mich. June 16, 2020).

Plaintiffs argue that contrary to Kentucky statutory law, Webster County took no formal action to widen the subject roadway. KRS § 178.040(1).[1] Instead, according to Plaintiffs, Webster

---

[1] KRS § 178.040 provides:
    (1) In order to change the width of a county road, the fiscal court, an urban-county government, or a consolidated local government shall make a special order for a different width. The order shall be recorded in the office of the county clerk. In order to change the width of the right-of-way of a portion of a county through road system the fiscal court of a county containing a city of the first class or a consolidated local government may make a special order for a different width. The order shall be recorded in the office of the county road engineer.
    (2) All county roads and all public roads that are being adopted into a county road system after July 13, 2004, shall occupy a minimum right-of-way width of thirty (30) feet, fifteen (15) feet in each direction as measured from the centerline of the road, unless the fiscal court finds that a thirty (30) foot minimum cannot be met due to the topography of the road or other extraordinary circumstances. All county roads and all public roads that were in existence prior to July 13, 2004, shall not be required to occupy a minimum right-of-way width of thirty (30) feet under this subsection. A fiscal court, an urban-county government, or a consolidated local government may order the minimum right-of-way to be a greater width. All roads added to the county through road system in a county containing a city of the first class or a consolidated local government in accordance with KRS 178.333 shall occupy a right-of-way width as ordered by the fiscal court or the consolidated local government.

8

County unilaterally widened the roadway and removed the Plaintiffs' fence, embankment abutting the road, dirt, and ditches, taking upwards of 10 feet[2] from the pre-existing edge of the road without compensation. KRS § 178.110.[3] [DN 48 at 5, 7–9]. *See also Com., Dept. of Highways v. Phillips*, 391 S.W.2d 377 (Ky. 1965) (condemnation case awarding compensation to adjacent landowner for widening of a roadway which took eight feet of the right-of-way).

In contrast, Webster County argues that it was not obligated to follow the procedures set forth in KRS § 178.040 for expanding a public road because it was merely utilizing its existing right-of-way. *See Ganote v. Commonwealth, Dep't of Highways*, 409 S.W.2d 165, 166 (Ky. 1966) ("We think it obvious that the utilization of the Department's unused or unpaved right of way in front of the Ganote property for a deceleration lane was something the Department was entitled to do without paying compensation to an adjoining owner. . . . Here, the state has not 'taken' the landowners' property, it has merely exercised a privilege it had—to utilize the rest of its right of way for a deceleration lane."). Because Frank Benson Road has been a county road since at least 1997, Webster County maintains that its right-of-way is measured pursuant to KRS § 178.025.[4]

---

(3) In acquiring a right-of-way for a county through road within any city, the fiscal court or the county court of a county containing a city of the first class or the consolidated local government may exercise any powers granted them by statute for the acquisition of property. KRS § 178.040(1).

[2] Mr. Hawkins testified that the county encroached on Plaintiffs' property 30 feet from the edge of the roadway. [Hawkins Dep. at 32].

[3] KRS § 178.110(1) provides: "If the court decides to establish or alter a county road, bridge or landing, and the compensation to be paid for the right-of-way cannot be fixed by agreement, the right-of-way shall be condemned under the procedure set forth in the Eminent Domain Act of Kentucky."

[4]KRS § 178.025 provides:
(1) Any road, street, highway, or parcel of ground, dedicated and laid-off as a public way and used without restrictions on a continuous basis by the general public for fifteen (15) consecutive years, shall conclusively be presumed to be a public road.
(2) In the absence of any record, the width of a public road right-of-way shall be presumed to extend to and include that area lying outside the shoulders and ditch lines and within any landmarks such as fences, fence posts, cornerstones, or other similar monuments indicating the boundary lines.

Webster County asserts that it did not alter anything beyond its statutory right-of-way, which according to Webster County extends to the top of the bank along the ditch. Accordingly, Webster County argues that summary judgment is warranted because the Plaintiffs suffered no constitutional violation since the road work was performed on the shoulders and ditch lanes which KRS § 178.025 explicitly includes in Webster County's right-of-way.

### 1. KRS § 178.025

Here, it is undisputed that Frank Benson Road is a county road and has been classified by Webster County as a county road since at least 1997. [DN 46-6, Steve Henry Aff. at ¶¶ 3-4]. Because Webster County adopted Frank Benson Road into the county road system prior to 2004, the width of the right-of-way of Frank Benson Road is measured pursuant to KRS § 178.025. *See Kentucky Utilities Co. v. Com., Dept. of Transp.*, 665 S.W.2d 918, 923 (Ky. App. 1983).

Under KRS § 178.025, records are first examined to determine the boundary of the Plaintiffs' land in relation to Webster County's right-of-way. No county records have been tendered by the parties to reflect the statutory right-of-way of Frank Benson Road. When, as here, the boundaries of a road or public right-of-way are not recorded, "the width of a public road right-of-way shall be presumed to extend to and include that area lying outside the shoulders and ditch lines and within any landmarks such as fences, fence posts, cornerstones, or other similar monuments indicating the boundary lines." KRS 178.025(2); *Mason v. Barnett*, No. 2016-CA-000778-MR, 2018 WL 5726387, at *5 n. 6 (Ky. App. Nov. 2, 2018). Absent records or landmarks, "the right-of-way of a public road shall be deemed to extend to and include the shoulders and ditch

---

(3) In the absence of both record or landmark, the right-of-way of a public road shall be deemed to extend to and include the shoulders and ditch lines adjacent to said road and to the top of cuts or toe of fills where such exist.
KRS § 178.025.

10

lines adjacent to said road and to the top of cuts or toe of fills where such exist." KRS § 178.025(3).

Accordingly, to succeed on their takings claim, Plaintiffs must prove that Webster County took Plaintiffs' property lying beyond the statutory right-of-way set forth in KRS § 178.025.

**2. Frank Benson Road Right-of-Way**

In support of its motion for summary judgment, Webster County offers evidence, via the deposition of Webster County Road Supervisor Rob Mooney, that Webster County widened Frank Benson Road, and, as part of the widening process, the banks on both sides of the road had to be reshaped and drainage ditches reconstructed. [DN 46-1, Mooney Dep. at 24]. Mooney testified that all the work done on the south side of the road—the Hawkins property—was done within the county's right-of-way. Webster County also submitted a photograph attached to Sheriff Frankie Springfield's affidavit which depicts two rusted fence posts past a speed limit sign on Frank Benson Road that he represents existed before and after the road work. [DN 46-7, Springfield Aff. at Ex. 7].

In response, Plaintiffs submit the deposition testimony of Mr. Hawkins and Supervisor Mooney, along with photographs of the work performed on Frank Benson Road, in effort to demonstrate a genuine issue of fact for trial. In his deposition, Mr. Hawkins testified that during the expansion project of Frank Benson Road, Webster County removed approximately 30 feet of the embankment of his property abutting the road and approximately $104,000.00 worth of dirt. Specifically, Mr. Hawkins stated that prior to the road work, the embankment on his property was "up to edge of the right-of-way (the ditch)." [DN 46-3, Hawkins Dep. at 18, 32–33]. Mr. Hawkins further testified that prior to the widening of the roadway, Webster County also removed his original fence posts,[5] which for purposes of KRS § 178.025 would constitute landmarks. [*Id*. at

---

[5] Hawkins testified that "there was fence posts, where they just mowed over the fence posts when they was cutting the dirt away; went in on me and cut the dirt." [DN 46-3, Hawkins Dep. at 22].

11

22–25]. In addition to Mr. Hawkins's testimony, Plaintiffs tendered numerous photographs which they maintain portrays the original road and right-of-way, including a photograph of the speed limit sign which Plaintiffs claim reveals the edge of the original right-of-way. [DN 48 at Ex H]. In fact, Webster County Road Supervisor Mooney admitted that the county removed or "sloped back" part of the southern bank, and he demarcated the position of the original road in a series of pictures reflecting the extent of Webster County's extension of the road and right-of-way. [DN 48-11, Mooney Dep. at 24–25, 51–52].

Interestingly, Supervisor Mooney also testified that prior to Webster County's entry upon Mr. Benson's property, Webster County obtained written permission to use his land and to widen the roadway by removing a fence and part of his bank. [DN 48-11, Mooney Dep. at 26–27]. However, in contrast to Webster County's action with respect to Mr. Benson's property, Webster County never sought nor secured any permission from Mr. Hawkins to do the same. [*Id*. at 54].

Furthermore, to demonstrate the boundary and the extent of the alleged damages from the road project, Plaintiffs tendered a map created by surveyor Thomas Crabtree created in February 2020. [DN 48 at Ex. E]. While the Court agrees that this map alone provides no independent basis for determining the public right-of-way of Frank Benson Road at the time of the road work, this map combined with Mr. Hawkins' testimony and supporting pictures create sufficient evidence to support the takings claim against Webster County.

For these reasons, the Court finds that genuine issues of fact exist concerning whether the widening of Frank Benson Road, the alteration of the right-of-way, and removal of dirt by Webster County constitute a taking of Plaintiffs' property in violation of the Fifth Amendment.

**E. State Law Malicious Prosecution Claim**

Webster County moves for summary judgment on Plaintiffs' state law malicious

prosecution claim. Plaintiffs concede that they have not established a claim against the Webster County Sheriff's Office for malicious prosecution. Accordingly, summary judgment is granted on this claim.

## F.  State Law Trespass

Webster County moves for summary judgment on Plaintiffs' state law trespass claims against the Webster County Road Department and unknown road workers based on the alleged removal of dirt and the county inmates entering Plaintiffs' property in August 2016 to relieve themselves.

### 1.  Dirt Removal

Defendants argue that the Webster County Road Department is not the proper party for this claim. According to Defendants, a state law claim for trespass against a government entity is actually a claim for inverse condemnation, and the proper defendant is Webster County because it is the only party possessing the power of eminent domain. KRS § 416.540(2). Defendants argue that because no takings claim can be made against the Road Department or Unknown Road Workers, they are entitled to summary judgment. Plaintiffs do not respond to this argument.

Because Plaintiffs failed to address this issue in response to the motion for summary judgment likely because the same claim is asserted in their federal claim, they seemingly have abandoned their state law trespass claim regarding the dirt removal. *See Brown v. VHS of Michigan, Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013); *Morrison v. Trulock*, No. 1:19-CV-00004-GNS, 2020 WL 2090525, at *6 (W.D. Ky. Apr. 30, 2020); *Sykes v. Dudas*, 573 F. Supp. 2d 191, 202 (D.D.C. 2008) ("[W]hen a party responds to some but not all arguments raised on a Motion for Summary Judgment, a court may fairly view the unacknowledged arguments as conceded."). Therefore, the Court grants summary judgment as to this portion of the trespass claim.

### 2. Trespass by Jail Inmates

With respect to the trespass claim premised on *respondeat superior* liability for jail inmates relieving themselves on Plaintiffs' property in August 2016, Webster County is entitled to sovereign immunity from this state law tort claim. Similarly, the Webster County Road Department, as an agency of the county government performing governmental functions, is also entitled to immunity. *See, e.g., Comair, Inc. v. Lexington-Fayette Urban County Airport Corp.*, 295 S.W.3d 91, 104 (Ky. 2009); *Bryant v. Louisville Metro Housing Auth.*, 568 S.W.3d 839, 845–46 (Ky. 2019); *Mason v. Barnett*, No. 2016-CA-000778-MR, 2018 WL 5726387, at *1 (Ky. App. Nov. 2, 2018) (suit against McCracken County Road Department dismissed on immunity grounds); *Schwindel v. Meade County*, 113 S.W.3d 159, 163 (Ky. 2003) ("If damages could be recovered against a county on the basis of *respondeat superior*, the concept of sovereign immunity would be largely nullified . . . ."); s*ee also Wells v. Com., Dep't of Highways*, 384 S.W.2d 308, 308 (Ky. 1964) (even if defense of sovereign immunity is not relied upon, "it is a constitutional protection that can be waived only by the General Assembly and applies regardless of any formal plea."). Accordingly, summary judgment is granted.

### IV. CONCLUSION

**IT IS HEREBY ORDERED** that the motion by Defendants for summary judgment [DN 45] is **GRANTED IN PART AND DENIED IN PART** consistent with this Opinion.

*Joseph H. McKinley Jr.*

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc: counsel of record

February 22, 2021